```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Todd Milliser,                :

       Plaintiff,             :

   v.                         :     Case No.  2:16-cv-56
                              :
Commissioner of Social Security,    Magistrate Judge Kemp

       Defendant.             :
```

OPINION AND ORDER

I. Introduction

Plaintiff, Todd Milliser, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on October 30, 2012, and alleged that Plaintiff became disabled on February 28, 2009.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on November 24, 2014. In a decision dated January 23, 2015, the ALJ denied benefits. That became the Commissioner's final decision on December 9, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on March 29, 2016. Plaintiff filed a statement of specific errors on June 28, 2016, to which the Commissioner responded on October 12, 2016. Plaintiff did not file a reply brief, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Mr. Milliser was 49 when the administrative hearing was held. He has a high school education. He testified to the following at the administrative hearing (see Tr. 53-91).

Plaintiff first testified that he had worked from 2007 to 2009 as a roof estimator and salesperson. He had to stop working because he could no longer climb stairs or ladders to look at roofs. His job involved frequent checking on the progress of roofing work and supervising the roofers. He did the same job for a roofing company before starting his own business. The other job he had in the past fifteen years was running a machine which stuffed coupons into envelopes. He lifted up to forty or fifty pounds in the self-employed roofing job, and less than 20 pounds in the other two positions.

When asked why he could no longer work, Plaintiff replied that he could not walk without pain. He could walk for no longer than three to five minutes with pain medication, and not at all without it. After a short walk, his muscles cramped up and would not release. He would have to sit for at least half an hour before getting up again. Also, he experienced numbness in his hands and would drop objects. Finally, he described depressive symptoms and panic or anxiety attacks (which could also be seizures) accompanied by tunnel vision and ringing in his ears. His doctor had prescribed a walker for him and he had been using it for two years. Due to depression, he slept excessively and had a poor appetite.

Plaintiff further testified that he was unable to do household chores except for folding laundry while sitting. He had difficulty with tasks like bathing and shaving. He was able to watch television and to go to medical appointments. He could sit but had to prop up his legs. Plaintiff could carry a gallon of milk but it was painful to do so. He said that his symptoms had gotten progressively worse but he was resistant to increasing his medication.

### III. The Medical Records

The medical records in this case are found beginning on page

238 of the administrative record.  The Court will summarize those records which pertain to Plaintiff's three statements of error.

### A. Physical Impairments

Plaintiff was seen at the emergency room a number of times in late 2012 reporting chronic low back pain.  The record also contains office notes for treatment of that condition. Diagnostic tests from that time frame show only mild findings.  He was taking various medications at that time including Vicodin.  He left one visit against medical advice.  See Tr. 418.

The first comprehensive medical report comes from Dr. Karas, a neurosurgeon, who saw Plaintiff on October 29, 2012.  Plaintiff described a ten-year history of back pain as well as pain in the thighs and lower legs.  He had recently had a lumbar injection without lasting relief.  Lower extremity examination was difficult due to pain.  Straight leg raising was positive bilaterally.  Dr. Karas concluded that the amount of pain which Plaintiff was reporting was not consistent with the objective test results and he recommended an EMG.  No surgical intervention was recommended.  (Tr. 321-23).  The subsequent EMG was a normal study.  (Tr. 324-25).

There is a functional capacity evaluation form appearing as part of a set of treatment notes from 2012.  It indicates that Plaintiff was seen from August to December, 2012, suffered from back and leg pain of uncertain etiology, and would be severely limited in walking bending, and stooping.  Also, Plaintiff used a walker and could not sit for more than two hours at a time.  Although the form is not signed, it apparently was filled out by Dr. Henriques.  (Tr. 376-77).  There are more notes from Dr. Henriques' office in 2013 which are similar to the 2012 treatment notes.

Plaintiff began seeing Dr. Figg in 2013 for treatment for his back and leg pain.  Dr. Figg reported on May 13, 2013, that

after an initial visit, Plaintiff's medications were adjusted and he reported significant reduction in his pain. (Tr. 452-53). He was still having diffuse pain at the next visit. Dr. Figg noted that Plaintiff had walked out of the room without his walker at the end of that visit. (Tr. 478-79). In an August, 2013 note, Dr. Figg commented that there may be some embellishing or predominately psychogenic component to Plaintiff's pain. (Tr. 474-76). Neurologic testing done in November of that year did not show any ongoing neuromuscular disorder. (Tr. 520). Dr. Figg's office note from February 11, 2014 was not materially different from his earlier ones, with a workup still ongoing. (Tr. 527-28). Another EMG study done that month was again normal. (Tr. 549-50). A prior note from Dr. Johnson, who read the EMG study, showed that Plaintiff could walk with or without his walker. (Tr. 552-54).

    Plaintiff was seen by Dr. Ott of Fairfield County Professionals Rheumatology on August 5, 2014. He reported muscular pain in both legs. He denied any joint inflammation. Dr. Ott found no evidence of rheumatoid arthritis, and she recommended further testing. (Tr. 613-14). At about the same time, Plaintiff was referred to the Berger Hospital Pain Management Center by Dr. Menosky, his primary care physician. At that point, he had great difficulty transitioning from sitting to standing, walked with an antalgic gait, and was using a walker. Again, no specific cause of his pain was uncovered. (Tr. 655-57).

    Finally, Dr. Roger Miller saw Plaintiff on February 2, 2014, for a basic medical and consultative exam. Plaintiff reported an 8-year history of back pain with radiation into both legs. He also described muscle pain in both legs, a pinched nerve in his back, and nerve pain which limited his exercise tolerance and ability to walk and perform routine tasks. Dr. Miller checked

boxes indicating that Plaintiff could not heel-and-toe walk and used a walker.  His examination showed loss or some range of motion in the spine, but upper and lower extremities showed normal range of motion and straight leg raising was negative bilaterally.  He concluded that Plaintiff was extremely limited in his ability to stand and walk, to lift and carry, and to push and pull, although his sitting ability was only slightly limited.  Dr. Miller also said that Plaintiff could not climb stairs, shop, or do household chores, and needed help in bathing, dressing, doing laundry, cooking, and using public transportation.  (Tr. 628-32).

### B. Psychological Impairments

Plaintiff saw Dr. Marc Miller for a psychological evaluation on January 15, 2013.  He reported suffering from a neuromuscular disease which required frequent injections and from a seizure disorder controlled by medication.  Plaintiff used a walker and walked very slowly.  His behavior indicated depression and he was excessively talkative and had to be refocused constantly.  He reported panic attacks which had also been helped by medication.  Dr. Miller concluded that Plaintiff would have no difficulty dealing with simple job instructions but would have some problems relating to others.  He also had some impairment in his attention and concentration due to anxiety and the same was true with respect to dealing with work stress.  His GAF function level was rated at 40, although it was 55 as to symptoms.  (Tr. 432-36).

### C. State Agency Reviewers

State agency reviewers also expressed opinions about Plaintiff's functional capacity.  The short version of those opinions is that, from a physical standpoint, both Dr. Bolz and Dr. Klylop thought that Plaintiff could do a limited range of light work, and that both Dr. Rivera and Dr. Hoffman concluded that he could do simple, routine work with restrictions on his

contact with others in the workplace and in a relatively static work setting with clear performance expectations. (Tr. 102-117, 119-135).

### IV. The Vocational Testimony

James Breen was the vocational expert in this case. His testimony begins at page 91 of the administrative record.

Mr. Breen first testified that Plaintiff's past relevant work as a roofing estimator was skilled and medium, and the mailing insert machine operator was unskilled and light.

Mr. Breen was then asked to testify about a hypothetical individual with Plaintiff's age, education, and work experience. The person could work at the light exertional level but could only stand or walk for four hours in an eight-hour work day, could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, and could occasionally climb ladders, ropes, and scaffolds. Also, the person had to avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. The person could understand, remember, and carry out simple, routine, repetitive tasks with occasional interaction with coworkers, supervisors, and the general public that did not involve persuading others or conflict resolution, could tolerate occasional changes in routine with relatively static duties, and had to avoid fast-paced work or production quotas. Mr. Breen said that such a person could not do any of Plaintiff's past jobs, but someone so limited could perform sedentary unskilled jobs like circuit board tester, eyeglass assembler, and sorter. He gave numbers for such jobs in the State and national economies. If the person had to use a walker, however, that would preclude employment in those jobs or other sedentary jobs, as would needing frequent redirection to stay on task.

In response to additional questions from Plaintiff's counsel, Mr. Breen testified that a limitation of only occasional

use of the upper extremities for handling, fingering, pushing, and pulling would be work-preclusive, as would being off-task for more than 15% of the day or missing two days per month for medical reasons.

>        V.   The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 27-38 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014.  Next, the ALJ found that he had not engaged in substantial gainful activity since his alleged onset date of February 28, 2009.

Going to the next step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including back problems, seizures, anxiety, depression, and pain disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level except that he could only stand or walk for four hours in an eight-hour work day, could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, and could occasionally climb ladders, ropes, and scaffolds.  Also, he had to avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. Plaintiff also could understand, remember, and carry out simple, routine, repetitive tasks with occasional interaction with coworkers, supervisors, and the general public that did not involve persuading others or conflict resolution, could tolerate

occasional changes in routine with relatively static duties and had to avoid fast-paced work or production quotas.

The ALJ next concluded that Plaintiff, with these limitations, could not do any of his past relevant work. However, Plaintiff could do a number of light jobs such as circuit board tester, eyeglass assembler, and sorter.  The ALJ further found that these jobs existed in significant numbers in the State and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.   Plaintiff's Statement of Specific Errors

Plaintiff raises three issues in his statement of errors: (1) the ALJ did not give proper weight to the functional opinions of the treating and consulting physicians; (2) the ALJ did not properly evaluate Plaintiff's pain and the effect it had on his capacity to work; and (3) the ALJ erred in not incorporating a limitation of the need to use a walker into the residual functional capacity finding.  Each of these contentions is reviewed under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is

supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Medical Opinions

In this statement of error, Plaintiff contends, first, that the ALJ did not give sufficient weight to the opinion of Dr. Henriques, a treating source, and, second, to the opinion of Dr. Roger Miller, the consultative examiner. He asserts that the ALJ's basis for discounting Dr. Henriques' opinion - that it was based only on Plaintiff's subjective complaints - is not supported by the record, and the same is true for Dr. Miller's opinion. The Commissioner responds that the ALJ had a sound basis for concluding that Dr. Henriques based his views on Plaintiff's subjective complaints because the objective evidence does not support such extreme limitations, and that Dr. Miller's opinion could properly have been discounted because it (unlike the opinions of the State agency reviewers) was not supported by, and was inconsistent with, the other evidence in the record.

The Court begins with the treating physician's opinion. It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating

-9-

physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

 Here, the ALJ first found that Plaintiff's description of his symptoms was not fully credible (something which Plaintiff challenges in his second statement of error).  Next, the ALJ summarized the medical evidence from 2012 which predated Dr. Henriques' opinion, noting that it showed only mild degenerative disease in the lower spine and normal EMG results. The ALJ also discussed the fact that Plaintiff appeared to be walking normally during a November, 2012 emergency room visit and that he left against medical advice after being told he would not be given Dilaudid.  The ALJ then addressed Dr. Henriques' opinion, giving it "little weight" because "[t]he limitations proposed are based on subjective statements by the claimant."  (Tr. 34).  The ALJ gave, as examples of this, the fact that Plaintiff was able to walk without a walker only a month before, but Dr. Henriques said he required one; the fact that there was nothing in the evidence suggesting that Plaintiff could sit for only two hours; and the fact that Plaintiff told Dr. Henriques that the EMG test results

-10-

were abnormal.

Plaintiff is correct that Dr. Henriques did not specifically say that he was basing his opinion on Plaintiff's subjective reports of disabling symptoms. However, as the Commissioner argues, that is a fair inference to be made from the record. There were no objective test results reported prior to December, 2012, when Dr. Henriques filled out the form in question, explaining any kind of disabling symptoms (and, in fact, there are none in the succeeding years either). Dr. Henriques did not explain what test results or examination findings supported his view that Plaintiff could not sit for more than two hours or needed to use a walker, and there is evidence in the record contradicting both of these findings. The ALJ also mentioned the fact that Dr. Henriques did not start treating Plaintiff until only four months before he expressed his opinion and apparently saw him only a few times in that four-month period. All of these factors were adequately explained by the ALJ and are appropriate reasons for discounting the opinion of a treating source.

Dr. Miller, of course, was not a treating source, and his opinion was not required to be given the same level of deference. Under Social Security Regulation 06-03p, however, medical opinions from non-treating sources are still evaluated using the criteria listed in 20 C.F.R. §404.1527(c). An ALJ need not cite to every factor when explaining how a non-treating medical source opinion is evaluated, but there must be enough reasoning provided to allow the Court to determine that the ALJ considered the key factors of "supportability and consistency." See Kerlin v. Astrue, 2010 WL 3937423, *8 (S.D. Ohio March 25, 2010), adopted and affirmed 2010 WL 3895175 (S.D. Ohio Sept. 29, 2010). And, of course, the ALJ's determination of this issue must be supported by substantial evidence as well. See Locke v. Comm'r of Social Security, 2017 WL 1044772, *5 (S.D. Ohio March 20, 2017)(ALJ must apply these factors "in a way that is supported by the

-11-

evidence").

After discussing Dr. Henriques' opinion, the ALJ continued to review the evidence, noting that again in March, 2013, Plaintiff was reported as having no trouble walking when he visited the emergency room. He again was denied medication. (Tr. 34). He also forgot his walker temporarily when leaving a June, 2013 medical appointment. Plaintiff underwent many tests during 2013 but was never diagnosed with either a neuromuscular disorder or myotonic dystrophy. The ALJ then assigned considerable weight to the opinions of the state agency reviewers as being consistent with the record. Finally, the ALJ discussed Dr. Miller's opinions, giving them little weight because of inconsistencies with the other medical records and with Dr. Miller's own findings, and because they, too, appeared to be based on Plaintiff's subjective complaints.

Again, the body of medical evidence, accurately summarized by the ALJ, is clearly lacking in objective support for Plaintiff's claim of disabling symptoms. The ALJ is correct that no doctor diagnosed any type of neuromuscular disease, which is what Plaintiff testified his leg pain was caused by. The inconsistent evidence about his own use of a walker, and the lack of evidence supporting the need for one, allowed the ALJ to infer that opinions about that device, such as Dr. Miller's, had to be based on Plaintiff's subjective reports. There are also inconsistencies between the findings of normal muscle strength and range of motion and some of the limitations Dr. Miller imposed; again, the only reasonable explanation for that is that Dr. Miller credited Plaintiff's statements about the extent to which pain, rather than some other functional limitation, affected his abilities. Because the ALJ did apply the key factors of consistency and supportability to Dr. Miller's opinion, and because there is substantial support in the record for the way she did so, the Court cannot grant Plaintiff any

relief based on the ALJ's decision to assign only little weight to either Dr. Henriques' or Dr. Miller's opinions.

### B. Evaluation of Plaintiff's Pain

Plaintiff's second argument is that the ALJ's credibility finding, which discounted Plaintiff's complaints of disabling pain, is contrary to the weight of the evidence. Plaintiff asserts that subjective complaints of pain must be analyzed under the factors listed in SSR 96-7p, which include symptoms and treatment, and contends that the ALJ read the record in a selective fashion, focusing on the normal examination and test findings while ignoring other evidence which confirmed the existence of severe pain. He claims that although the various treating doctors never identified the source of his pain, the treatment they provided, including narcotic medication, indicates that it was real, and that he did not engage in any daily activities which were inconsistent with disabling pain.

A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking. Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

The ALJ acknowledged that SSR 96-7p provides the appropriate framework for judging a claimant's credibility. (Tr. 35). The ALJ then cited, as reasons for finding Plaintiff less than fully

-13-

credible, the objective medical evidence, as summarized above, and "several inconsistencies that do not bolster the claimant's credibility." Id. The ALJ did not specifically identify those inconsistencies, but they presumably include those instances where Plaintiff did not appear to use or need a walker and the times when he unsuccessfully sought narcotic medication from the emergency room, as well as the fact that Plaintiff claimed disability dating back to 2009 even though he denied any debilitating symptoms in 2011. (Tr. 33). The ALJ did not discuss Plaintiff's activities of daily living in finding him less than fully credible, and the summary given by the ALJ of Plaintiff's testimony accurately reflects the fact that Plaintiff did not admit to activities of daily living which were compatible with full-time employment.

Certainly, the ALJ could have included a more robust analysis of Plaintiff's credibility. On the other hand, she cited to the appropriate source of law and touched on several of the relevant factors, which, in this case, clearly includes the inability of Plaintiff's doctors to identify a cause for his most severe symptoms. The ALJ did not disregard evidence that, at times, he walked with an abnormal gait or used a walker, but simply found that inconsistencies in his presentation detracted from his credibility. Overall, the ALJ made a decision that was within her "zone of choice," see Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001), and this Court is not free to disturb it.

### C. Use of a Walker

Plaintiff's third and final statement of error relates to the issue of whether he needed to use a walker. The vocational expert testified that, if that were the case, Plaintiff was not employable. The Commissioner argues that the ALJ had a reasonable basis - mainly the instances cited above - for finding that a walker was not medically required.

Plaintiff is correct that many of the medical sources

-14-

reported that Plaintiff used a walker. That is not the same as saying that his medical condition required one, however. The Court has already upheld both the ALJ's decision to discount the opinion of Dr. Henriques and Plaintiff's own testimony about his limitations, and the ALJ also limited Plaintiff to less than a full range of light work based on his subjective complaints and the clinical evidence. The jobs which the vocational expert identified were all sedentary jobs. Plaintiff is essentially arguing that the record compels the conclusion that he needed to use a walker to do even the amount of walking required for sedentary work. The Court believes that reasonable minds could differ on that issue. Consequently, there is no basis for overturing the ALJ's finding.

## VII. Decision

Based on the above discussion, Plaintiff's statement of errors (Doc. 17) is overruled. The Commissioner's decision denying benefits is affirmed. The Clerk is directed to enter judgment in favor of Defendant and to terminate this case.

/s/ Terence P. Kemp
United States Magistrate Judge